IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **LINDSEY J. TOMPKINS,** | ) | |
| | ) | |
| Plaintiff, | ) | **Case No: 1:20-CV-00569** |
| | ) | |
| v. | ) | |
| | ) | |
| **ROYAL ADMINISTRATIVE SERVICES, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

### FIRST AMENDED COMPLAINT

1. **COMES NOW** Lindsey J. Tompkins ("Plaintiff"), and files this Amended Complaint for damages and other legal and equitable remedies resulting from the illegal actions of Royal Administration Services, Inc. ("Royal"). Royal, or its agents, negligently, knowingly, and willfully called Plaintiff's cellular telephone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"), the Alabama Telemarketing Act, Ala. Code § 8-19A-1 *et seq* ("A.T.A."), and the Alabama Telephone Solicitations Act, Ala. Code §§ 8-19C-2 through 8-19C-12 ("ATSA").

2. Plaintiff, as her Complaint, alleges as follows upon personal knowledge of her acts and experiences and as to all other matters, upon information and belief, including an investigation conducted by her attorneys.

### NATURE OF THIS ACTION

3. This Complaint addresses the unlawful telemarking campaigns perpetrated upon Plaintiff by Royal through automated robocalls made without her prior consent. Robocalling has plagued American consumers for years and is getting much worse. According to Consumer

Reports, 48 billion robocalls were placed by telemarketers in the United States in 2018. This is higher than in any previous year and is a 56.9% increase from a year earlier, https://www.consumerreports.org/robocalls/mad-about-robocalls/, and the calls continued to increase in 2019 and 2020. According to YouMail, a company that tracks robocalls, over 3.8 billion calls were made during September 2020 alone.

4. Robocalls are now the largest source of consumer complaints to the F.T.C., accounting for more than 65 percent of the total complaints.

5. Robocalling, identified as a "scourge" by the United States government, is much more than a mere annoyance. The constant deluge of robocalls reduces nearly every adult American's productivity in taking the time to either answer or block the call. The scourge of robocalls has fundamentally altered how Americans use their telephones, with far fewer consumers answering unrecognized calls. This harms legitimate callers, such as businesses and emergency agencies, who have legitimate purposes for contacting consumers by telephone and are willing to do so lawfully.

6. A significant reason the robocalling problem has exponentially increased is the low costs made possible by highly effective automated telephone dialing systems. A simple google search for "robocalls" will reveal ads for thousands of calls for just a few dollars. One expert estimates that robocalling every citizen in Seattle would cost about $150.00, https://medium.com/@TProphet/the-broken-economics-of-robocalls-b58f4842a407.

7. One of the most complained about telemarketing schemes is the sale of extended auto warranty plans through robocalling campaigns. Some auto warranty companies, either directly or through agents, use automated systems to send thousands of unsolicited calls with

messages regarding the expiration of the called party's manufacturer's warranty and an offer to sell an extended warranty. Royal engages in similar telemarketing campaigns.

8. Royal placed, or through its agents, caused to be placed, robocalls to Plaintiff well after her number was listed on the National Do Not Call Registry marketing their warranty products.

9. Congress enacted the TCPA in 1991 to address the intrusion on personal privacy posed by automated telephone calls. Congress recognized that automated calls are a nuisance, an invasion of privacy, and a threat to public safety and interstate commerce. Through the TCPA, Congress provided a means for consumers to seek redress for unlawful calling practices. The TCPA prohibits telemarketing calls to cellular telephones by using either an automated telephone dialing system, prerecorded messages, or artificial voice messages. The TCPA also establishes a nationwide Do-Not-Call Registry ("DNCR") and prohibits telemarketing calls to numbers placed on the registry.

10. The calls at issue violate the TCPA, including the rules regarding the DNCR.

11. The calls also violate Alabama Telemarketing Act, Ala. Code § 8-19A-1 *et seq*.

12. Finally, these calls violate the Alabama Telephone Solicitations Act, Ala. Code §§ 8-19C-2 through 8-19C-12 ("ATSA").

## THE PARTIES

13. Plaintiff is a resident of Mobile, Mobile County, Alabama.

14. Defendant, Royal Administration Services, Inc. ("Royal"), is a corporation whose principal place of business is in Hanover, Massachusetts, and its Registered Agent is in Tallahassee, Florida. Royal has engaged in business within this judicial district in the State of Alabama.

## JURISDICTION AND VENUE

15. Jurisdiction in this Court is proper under 28 U.S.C. § 1331 as Plaintiff has claims that arise under the laws of the United States. This Court has supplemental jurisdiction over the state law claims according to 28 U.S.C. § 1367. Those claims arise from a set of operative facts common to her federal claims.

## FACTUAL ALLEGATIONS

16. Royal, either directly or through its agents, has robocalled, or caused to be robocalled, thousands of consumers, including Plaintiff, without their prior written express consent through the use of an ADTS and/or prerecorded or artificial voice technology. Many calls, including the calls made to Plaintiff, were made to numbers placed on the DNCR. Each call was made in violation of the TCPA.

17. Between October 30, 2019, and February 10, 2021 Plaintiff received 16 calls from 973-307-9198.

18. In addition, Plaintiff received one call from 800-799-9104 on February 10, 2020, and three calls from 800-794-9104 on February 12, 2020.

19. Plaintiff was able to record the call she received on February 10, 2020, from a person representing Royal. A transcript of the call is attached as Exhibit One.

20. When Plaintiff answered the call, there was a short, multi-second delay, followed by a click and a human voice.

21. As shown in Exhibit One on pp. 2-3, the callers knew the make and model of Plaintiff's vehicle at the time the call was placed.

22.     The callers also had Plaintiff's former address. Exhibit One on p. 4.

23.     During the conversation, Royal's agent pitched the Royal "Ultimate" plan. Exhibit One on p. 15.

24.     Royal sells such a plan. Exhibit Two on p. 2.

25.     Each of the robo calls indicated in Plaintiff's Caller ID records that they were local calls. For example, see below:

| Feb 10 | 11:58 AM | 973.307.9198 | Creola, AL | Incoming, CL | 12 |

26.     At the time Royal made, directed, or otherwise caused the calls to be made, to Plaintiff, Royal was well aware of Alabama law and the TCPA requirements and was aware that masking the true place of origination of automated marketing calls to consumers violated Alabama law and the TCPA.

27.     Masking the place of the origination of the calls is further evidence of Royal's knowing and willful violations and were made through the use of "spoofing" technology. That technology is purposefully designed to (1) mask the identity of the caller, and, (2) make the call appear to be from a local number in order to increase the likelihood that the consumer will answer. This tactic is designed to generate business and profit while at the same time skirting the legal consequences of what the caller knows are unlawful calls. This bad faith effort to sabotage consumers' call screening efforts demonstrates the caller's knowledge that the calls are unlawful.

28.     The unlawful telemarketing calls repeatedly invaded the personal privacy of Plaintiff causing her to suffer damages, injury-in-fact and entitling her to relief provided under Alabama law and the TCPA, including 47 USC § 227(b)(3)(B).

29.     When Plaintiff answered the calls, there was a short, multi-second delay followed by a click and a human voice.

30. On or about February 10, 2020, Plaintiff received a phone call from 973-307-9198.

31. She answered the call and was greeted by "Lisa" who asked if she still owned her GMC Sierra vehicle. Then the following conversation ensued:

Speaker 1: Services for your GMC. I was with *** Sierra --

Speaker 2: I'm sorry, who are you?

Speaker 1: Lisa in dealer services for your GMC, are you still the owner?

Speaker 2: Yes.

Speaker 1: I do need to confirm your current mileage ma'am. How many miles do you have on the GMC?

Speaker 2: Sixteen thousand.

Speaker 1: Sixteen thousand? Okay, perfect. So the file's still open, ma'am, so, what I'll do is get my GMC agent on the line. They're waiting to go over some options with you, ma'am. Would you please hold the line for me? [1]

32. The call was transferred and a person calling himself "Marcel" and it was apparent that Marcel knew the make and model of Mrs. Tompkins' vehicle.

33. When Marcel picked up, he stated that he was the agent assigned to "your GMC Sierra."

34. After answering some questions and going back and forth, Marcel eventually offered Mrs. Tompkins a "Royal Protect Ultimate" plan. Exhibit One at p. 15.

35. Royal, sells such a plan as indicated by its website. See Exhibit Three at p. 2.

36. Royal is a national provider of consumer service agreements for automotive extended service plans. *Id*.

---

[1] See Ex One at pp. 1-2.

37.   Royal sells and administers automotive extended protection plans nationwide. A significant part of Royal's marketing plan is the solicitation business through telemarketing campaigns.

38.   Royal also advertises its products on a website https://www.royaladmin.com/ .

39.   Royal also uses its website to recruit robo callers and dealerships? Exhibit Four.

40.   While Royal may or may not robocall prospective clients using its own employees, it trains and encourages others to do so on its behalf. See Exhibit Four at p. 7.

41.   Royals' agents and callers employ automated systems to contact thousands of consumers through their cellular telephones in a very short period and at a low cost. Upon information and belief, the telemarketing campaigns also employ prerecorded or artificial voice technology.

42.   Royal offers several "Royal Protect" plans and products for sale via the Internet and a national network of call centers.

43.   The plans have various levels of coverage ranging from the "Primary" plan to their "Ultimate" plan. Exhibit Four at pp. 2-4.

44.   The TCPA prohibits calls made to a cellular telephone using either an ATDS or prerecorded or artificial voice without the called parties' consent. For telemarketing calls, such as those placed, or caused to be placed, by Royal to Plaintiff, the TCPA requires prior express <u>written</u> consent by every person called.

45.   In 2003, the federal government established the National Do Not Call Registry ("DNCR") to protect consumers from unwanted calls. The DNCR allows consumers to register telephone numbers, thereby indicating their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64-120(c)(2). The TCPA and its implementing regulations prohibit

telephone solicitation calls to telephone numbers listed on the registry. See 47 U.S.C. § 227(c); 47 CFR. § 64-1200(c)(2) (the "Do Not Call Rule"). Any person whose number is on the registry and who has received more than one telephone solicitation within a twelve (12) month period by, or on behalf of, the same entity may recover statutory damages under the TCPA against the violator. See 47 U.S.C. § 227(c)(5).

## CALLS TO PLAINTIFF

46. When Plaintiff answered the calls, a short, multi-second delay was followed by a click and a human voice.

47. Upon information and belief, at least one of the calls employed a prerecorded or artificial voice.

48. At all times relevant herein, Plaintiff's cellular telephone number was listed on the DNCR. Plaintiff registered her cellular telephone number XXX-XXX-7876 with the DNCR for the express purpose of avoiding unwanted telemarketing calls. Plaintiff's cellular number was registered on the DNCR more than thirty-one (31) days before the calls.

49. Plaintiff uses her cellular telephone number as her main residential line, and Royal's calls wasted her time, used her cellular telephone time, caused mental anguish and aggravation.

50. Royal made the calls directly, or the calls were made on its behalf by third persons working at Royal's direction. The third parties initiating the unlawful calls on Royal's behalf, if any, did so pursuant to a contract with and actual or apparent authority from Royal and, in any event, the actions taken by said third-parties were ratified by Royal knowingly reaping benefits, in the form of potential and actual sales, as a direct result of the unlawful calls.

51. The calls were made for marketing Royal's automobile warranties or similar vehicle protection products, and not made for emergency purposes, as defined by 47 U.S.C. § 227(b)(1)(A)(i).

52. The calls were made for purposes of soliciting a sale of consumer goods or services and/or to obtain information that may be used for the direct solicitation of a sale of consumer goods or services. The calls were "telemarketing calls" and "telephone solicitations" within the meaning of TCPA and Alabama law.

53. The calls were not isolated occurrences and were made in a pattern of repeated transactions of like nature.

54. Upon information and belief, the ATDS used by Royal, or on their behalf, can store or produce telephone numbers to be called using a random or sequential number generator.

55. Upon information and belief, the ATDS used by Royal, or on Royal's behalf, also has the capacity to, and does, dial telephone numbers stored as a list or in a database without human intervention.

56. Neither Royal, nor its agents, employees or vendors, had prior express written consent to place the calls to Plaintiff.

57. The telephonic communications by Royal, or on its behalf, violated 47 U.S.C. § 227(b)(1).

58. Royal's calls to Plaintiff also violated the regulations promulgated under the TCPA regarding calls to consumers whose numbers are included in the DNCR.  Plaintiff received one or more such calls within a twelve (12) month period by Royal, or on their behalf, in violation of the Do Not Call Rule.  47 C.F.R. § 64.1200(c)(2).

59. The calls made by Royal, or on Royal's behalf, to Plaintiff constitute "telephone solicitation" as that term is defined at 47 U.S.C. § 227(a)(4) and 47 C.F.R. § 64.1200(f)(14).

60. Plaintiff suffered an invasion of a legally protected interest in privacy through Royal's conduct, which is specifically addressed and protected by the TCPA.

61. Plaintiff has suffered actual damages and injury-in-fact, including losing time in answering the calls and tracing their origin, the loss of use of her telephone for legitimate purposes and her productivity. Such calls have also invaded Plaintiff's privacy and statutory rights provided under the TCPA.

62. Plaintiff's harm suffered due to the Royal's TCPA violations bears a close relationship with the types of harm. The law has traditionally allowed redress under common law claims for invasion of privacy, nuisance, conversion, trespass to chattel and wantonness.

63. Plaintiff also extended time and effort gathering her cellular telephone bills in order to determine the dates of the calls, ascertaining who was making the calls and making the live recording of one call.

## COUNT ONE
## TELEPHONE CONSUMER PROTECTION ACT

64. Plaintiff incorporates the previous relevant allegations as if fully set forth herein.

65. Royal, directly or through agents, placed telephone calls to Plaintiff's cellular telephone without having obtained prior express written consent.

66. The calls were made with an ATDS and/or the use of prerecorded or artificial voice.

67. The calls were placed for marketing, advertising and selling Royal's extended auto warranty products and services. The calls constitute telemarketing and telephone solicitation as those terms are defined in 47 C.F.R. § 64.1200(f)(12) and (14).

68. Each call was made in violation of provisions of the TCPA, including 47 U.S.C. § 227(b)(1)(A).

69. The unlawful telemarketing calls repeatedly invaded the personal privacy of Plaintiff, causing her to suffer damages and entitling her to the relief provided under the TCPA, including 47 U.S.C. § 227(b)(3).

70. As a result of Royal's negligent violations of 47 U.S.C. § 227, *et seq.*, Plaintiff is entitled to an award of $500.00 in statutory damages for every violation under 47 U.S.C. § 227(b)(3)(B).

71. As a result of Royal's knowing and willful violations of 43 U.S.C. § (b)(3), Plaintiff is entitled to increased damages of up to $1,500 per violation.

**WHEREFORE,** Plaintiff requests that this Court enter a Judgement against Royal for violation of the TCPA, awarding the following relief:

A. An award of actual monetary loss to Plaintiff from such violations or the sum of five hundred dollars ($500.00) for each violation of the TCPA, whichever is greater;

B. An award of actual monetary loss to Plaintiff from each call made in violation of 47 C.F.R. § 64.1200(c)(2) or damages of up to five hundred dollars ($500.00) for each unlawful call, whichever is greater;

C. An award of enhanced damages to Plaintiff from each call made in knowing or willful violation of 47 C.F.R. § 64.1200 (c)(2) of up to three times the amount the statutory damages awarded pursuant to 47 U.S.C. § 227(c)(5)(B);

D. An award of enhanced statutory damages to Plaintiff for Royal's willful and knowing violation of up to $1,500.00 for each such violation of the TCPA;

E. An Order declaring that Royal's actions, as set out above, violate the TCPA;

F. A declaratory Judgment that telephone calling equipment used to make the calls constitutes an automatic telephone dialing system under the TCPA;

G. A declaratory Judgment that Royal, and/or their agents, used an artificial or prerecorded voice; and

H. Such other and further relief that the Court deems reasonable and just.

## COUNT TWO
## VIOLATION OF THE TCPA'S DO NOT CALL RULE

72. Plaintiff incorporates the preceding relevant allegations as if fully set forth herein.

73. Royal placed telephone calls, or caused such calls to be placed, to Plaintiff without having obtained her prior express written consent.

74. The calls were placed for the purpose of marketing, advertising and selling Royal's extended warranty product and services. The calls constitute "telemarketing" and "telephone solicitation" as those terms are defined in 47 C.F.R. § 64.1200(f)(12) and (14).

75. Each call was made in violation of provisions of the TCPA, including 47 U.S.C. § 227(c)(3) and the Do Not Call Rule promulgated under the TCPA, 47 C.F.R. § 64.1200(c)(2).

76. The unlawful calls repeatedly invaded the personal privacy of Plaintiff, causing her to suffer damages and entitling her to the relief provided under the TCPA, including 47 U.S.C. § 227(b)(3)(B) and (c)(5).

77. Each call was made in willful and knowing violation of the TCPA and the Do Not Call Rule.

78. As a result of Royal's violations of 47 U.S.C. § 227, *et seq.*, Plaintiff is entitled to an award of actual damages or statutory damages of up to $500.00 for every violation, according to 47 U.S.C. § 227(c)(5)(B).

79.     As a result of Royal's knowing and willful violations of 47 U.S.C. § 227, *et seq.*, Plaintiff is entitled to an award of enhanced damages of up to $1,500.00 for every offense, according to 47 U.S.C. § 227(c)(5).

**WHEREFORE,** Plaintiff requests that this Court enter a Judgement against Royal for violation of the TCPA, awarding the following relief:

A.      An award of actual monetary loss to Plaintiff from such violations or the sum of five hundred dollars ($500.00) for each violation of the TCPA, whichever is greater;

B.      An award of actual monetary loss to Plaintiff from each call made in violation of 47 C.F.R. § 64.1200(c)(2) or damages of up to five hundred dollars ($500.00) for each unlawful call, whichever is greater;

C.      An award of enhanced damages to Plaintiff from each call made in knowing or willful violation of 47 C.F.R. § 64.1200 (c)(2) of up to three times the amount the statutory damages awarded pursuant to 47 U.S.C. § 227(c)(5)(B);

D.      An award of enhanced statutory damages to Plaintiff for Royal's willful and knowing violation of up to $1,500.00 for each such violation of the TCPA;

E.      An Order declaring that Royal's actions, as set out above, violate the TCPA;

F.      A declaratory Judgment that Royal's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA; or

G.      A declaratory Judgment that Royal used an artificial or prerecorded voice; and

H.      Such other and further relief that the Court deems reasonable and just.

## COUNT THREE
## ALABAMA TELEMARKETING ACT

80.     Plaintiff incorporates the previous relevant allegations as if fully set forth herein.

81. In 1994 Alabama adopted the "Alabama Telemarketing Act" ("A.T.A.") Ala. Code § 8-19A-1 *et seq.*

82. On information and belief, Royal is not licensed in Alabama as required by Ala. Code § 8-19A-5(a) or is affiliated with an unlicensed commercial telephone seller in violation of Ala. Code § 8-19A-15(c).

83. Also, Royal never gave Plaintiff the oral disclosures required by Ala. Code § 8-19A-12.

**WHEREFORE,** Plaintiff requests that this Court enter a Judgement against Royal for violation of the Alabama Telemarketing Act, awarding the following relief:

A. An award of actual or statutory damages under Ala. Code § 8-19-10 and Ala. Code § 8-19A-23 plus reasonable attorneys' fees and costs;

B. Such other and further relief that the Court deems reasonable and just.

## COUNT FOUR
## ALABAMA TELEPHONE SOLICITATIONS ACT

84. Plaintiff incorporates the foregoing relevant allegations as if fully set forth herein.

85. The Alabama legislature enacted the Alabama Telephone Solicitations Act ("ATSA") in 1999 to address the intrusion on personal privacy posed by unsolicited telemarketing calls. It recognized such calls as "intrusive and relentless invasion of the privacy and peacefulness of home." Ala Code § 8-19C-1(4) (1975).

86. The ATSA was passed to provide Alabama consumers the power to decide whether to receive telemarketing calls and provide a means for consumers to seek redress for unlawful calling practices. The ATSA prohibits telemarketing calls to consumers who have placed their numbers on the nationwide Do-Not-Call Registry ("DNCR"). The ATSA also prohibits the use of

technology aimed at concealing the caller's identity, such as spoofing technology. The calls made by Royal, or at their direction, violate the ATSA.

87. Royal knowingly placed calls, or directed calls to be placed, to Plaintiff in violation of the ATSA, and Plaintiff is entitled to recovery for actual damages and statutory damages of $2,000 for each violation as provided in Ala. Code § 8-19C-7.

88. Through Royal's conduct above, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA and the ATSA.

89. By registering with the Do Not Call Registry, as alleged above, Plaintiff has given notice of her objection to receiving telephone solicitations within the meaning of Ala. Code Section 8-19C-2(a).

90. Royal, or their agents, also violated the ATSA by knowingly utilizing a method to block, or otherwise circumvent, the use of caller identification service, thereby obscuring the source of the solicitation calls made to Plaintiff. This is a violation of Ala. Code § 8-19C-5(b).

91. Plaintiff received multiple telephone solicitation calls within a 12-month period by, or on behalf of, Royal in violation of Section 8-19C-2(a) and Section 8-19C-5(b).

92. Plaintiff has suffered actual damages and injury-in-fact, including but not limited to, loss of time in answering the calls and tracing their origin, the loss of use of her telephone for legitimate purposes and her productivity. Such calls have also invaded Plaintiff's privacy and statutory rights provided under the ATSA.

**WHEREFORE,** Plaintiff requests that this Court enter a Judgement against Royal for violation of the Alabama Telephone Solicitations Act, awarding the following relief:

A. An award of actual or statutory damages under Ala. Code § 8-19-10 and Ala. Code § 8-19A-23 plus reasonable attorneys' fees and costs;

B. Two thousand dollars ($2,000.00) per call in damages for each knowing violation of Ala. Code § 8-19C-7; and

C. Such other and further relief that the Court deems reasonable and just.

**TRIAL BY JURY IS DEMANDED AS TO EVERY CLAIM ASSERTED HEREIN**

Respectfully submitted this on the 19th day of July 2022.

*/s/ Earl P. Underwood, Jr.*
**Earl P. Underwood, Jr.**
**21 South Section Street**
**Fairhope, Alabama 36532**
**Telephone: 251-990-5558**
**Facsimile:  251-990-0626**
epunderwood@alalaw.com
*Attorney for Plaintiff Lindsey J. Tompkins*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Notice has been served by filing said Notice with the Clerk of Court using the CM/ECF filing system, which will give notice to all counsel of record this **5th** day of August  2022.

*/s/ Earl P. Underwood, Jr.*
**EARL P. UNDERWOOD, JR.**
*Attorney for Plaintiff Lindsey J. Tompkins*