# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **LINDSEY J. TOMPKINS,** | ) |
| | ) |
| **Plaintiff,** | ) **Case No.: 1:21-CV-00288 KD-N** |
| | ) |
| **v.** | ) |
| | ) |
| **ROYAL ADMINISTRATION** | ) |
| **SERVICES, INC.** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## RESPONSE TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT

Defendant, Royal Administration Services, Inc. ("Royal") responds to Plaintiff's

First Set of Requests for Production to Defendant, dated January 10, 2022, as follows:

### GENERAL RESPONSE

Royal refers Plaintiff to (1) Defendant's Responses to Plaintiff's First Request for

Admission to Defendant, which were served on counsel for Plaintiff on May 18, 2022;

(2) Royal's Response to Plaintiff's First Interrogatories to Defendant which were served

on counsel for Plaintiff on March 16, 2022; and (3) a letter from Curtis Hussey to counsel

for Defendant dated June 12, 2022 and transmitted by email that date; (4) exhibits to the

June 12, 2022 letter transmitted therewith; (5) two emails from Curtis Hussey to counsel

for Plaintiff dated transmitted June 13, providing clarification of the June 12, 2022 letter.

Copies of each of those documents is being transmitted herewith.

Based on the referenced documents Royal submits that it has been improperly named in the instant lawsuit. Accordingly, the response to the Requests for Production is, for the most part, that there are no responsive documents.

### Request for Production

1. A copy- or a description by category and location – of all documents, electronically stored information, and tangible things in your possession, custody, or control, and that may be used to support your claims or defenses unless the use would solely for impeachment.

   **There are no responsive documents. See General Response above.**

2. Any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible Judgment in this Action or indemnify or reimburse for payments made to meet the Judgment.

   **There are no responsive documents. See General Response above.**

3. Any electronic information, logs, screenshots, memoranda, or other reports created or prepared using any computer system, software package, software system or other electronic or non-electronic device used in any manner by Defendant's employees, agents or vendors to contact Plaintiff's name, address, telephone numbers or any information that is personally identifiable to Plaintiff.

   **There are no responsive documents. See General Response above.**

4. Any documents relating in any manner to and evidencing each action taken by Defendant, its employees, agents or vendors scheduling (including communication, or attempted communication, between Defendant, its employees, vendors and agents, Plaintiff and any third party) that relates in any way to the contact of Plaintiff by Defendant; specifically including any records, recordings, action/call/mail logs, copies, electronic trails, screenshots, journal entries, memoranda, etc. (whether maintained electronically or otherwise) of such action.

   **There are no responsive documents. See General Response above.**

5. A copy of every document involving communications(s) or contact(s) between

you and any other person (whether in-house or with a third party) which in any way references Plaintiff or any of her identifiers.

**Other than communications with counsel, or research performed upon the advice of counsel and for the purpose of communicating the same with counsel and in the course of counsel's representation in the instant matter, there are no responsive documents. See General Response above. Royal objects to the production of any such documents on the grounds of attorney-client privilege.**

6. A copy of every document involving communication(s) or contact(s) between you and any other person (whether in-house or with a third party) which in any way references or relates in any manner (however remote) to any allegation or defense asserted in this Action.

   **Other than communications with counsel, or research performed upon the advice of counsel and for the purpose of communicating the same with counsel and in the course of counsel's representation in the instant matter, there are no responsive documents. See General Response above. Royal objects to the production of any such documents on the grounds of attorney-client privilege.**

7. A copy of all specification sheets, owner's manuals, training or operations materials, Software User Guides, promotional materials, datasheets or other written material (whether maintained in paper form or electronically) which relates in any manner to the installation, capabilities, maintenance and use of the equipment, components, programs, services, technologies, software and tools utilized directly or indirectly to contact Plaintiff.

   **There are no responsive documents. See General Response above.**

8. Any documents that may be described as studies, analyses, memorandums, business plans, reports, surveys or other such records (whether generated by Defendant, at Defendant's request by a consultant, vendor or agent or by an independent third-party) that address or relate in any manner to contacting potential clients by telephone.

   **Royal objects to the Request on the grounds that it is outside the scope of permissible discovery. Additionally, any such documents contain potential trade secrets of Royal. To the extent the Court determines that such documents should be produced despite the General Response set forth above,**

**Royal submits that such documents should only be produced subject to a protective order governing the use and distribution of same.**

9. Any documents relating in any manner to the methods, techniques, models, triggers, and standard operating procedures used to contact Plaintiff by telephone.

   **There are no responsive documents. See General Response above.**

10. A copy of all policy manuals, procedure manuals and other documents which address your policies, practices or procedures regarding contacting potential clients by telephone and compliance with the TCPA, including but not limited to:

   a. Documents relating to the content, timing and duration of all training that relates in any way to the maintenance, operation, employment or utilization of the methods, techniques, models and other systems used by Defendant to contact potential clients by telephone and the policies and procedures relating to it; and

   b. Documents relating to the content, timing and duration of all training that relates in any way to federal and state laws and the common law legal duties of Defendant to consumers relative to telephone contact.

   **Royal objects to the Request on the grounds that it is outside the scope of permissible discovery. Additionally, any such documents contain potential trade secrets of Royal. To the extent the Court determines that such documents should be produced despite the General Response set forth above, Royal submits that such documents should only be produced subject to a protective order governing the use and distribution of same.**

11. A copy of all documents reflecting or relating to the practice, policies or procedures described in your answers to any of the Interrogatories, Requests for Production and Requests for Admission.

   **Royal objects to the Request on the grounds that it is outside the scope of permissible discovery. Additionally, any such documents contain potential trade secrets of Royal. To the extent the Court determines that such documents should be produced despite the General Response set forth above, Royal submits that such documents should only be produced subject to a protective order governing the use and distribution of same.**

12. A copy of all documents that relate in any manner (however remote) to the information sought through the Interrogatories and Requests for Admissions and to any allegation or defense asserted in this Action.
**Royal objects to the Request on the grounds that it is outside the scope of permissible discovery. Additionally, any such documents contain potential trade secrets of Royal. To the extent the Court determines that such documents should be produced, despite the General Response set forth above, Royal submits that such documents should only be produced subject to a protective order governing the use and distribution of same.**

13. Produce copies of any statements you have taken or received from any third person in any way connected or relating to any allegation or defense asserted in this Action.

    **There are no responsive documents.**

14. Produce copies of any statements, itemizations and invoices received from any vendor or other third-party service equipment provider of leads, equipment, components, programs, services, technologies, software and tools utilized directly or indirectly to contact Plaintiff.

    **There are no responsive documents. See General Response above.**

15. Produce a "plain-English" description or glossary for any lists, legends, codes, abbreviations, collection initials or other non-obvious terms, words or data contained in any of the documents produced in response to the Requests for Admission, Interrogatories and Requests for Production.

    **Royal objects to the Request on the grounds that it is outside the scope of permissible discovery. Additionally, any such documents contain potential trade secrets of Royal. To the extent the Court determines that such documents should be produced, despite the General Response set forth above, Royal submits that such documents should only be produced subject to a protective order governing the use and distribution of same.**

16. All documents identified, consulted, reviewed or referred to in response to any Requests for Admission, Interrogatories and Requests for Production.

**\*\*\*DISCUSS\*\*\***

17. Any documents relating in any manner to all lawsuits, legal claims, regulatory complaints, regulatory reports, arbitrations, mediations, in-court settlements/consent judgments, out-of-court settlement or any other proceedings, formal or informal, brought by, in, or to the Better Business Bureau, Commerce Department, Federal Trade Commission, Federal Communications Commission, Court or other regulatory agency, against Defendant, and its employees/agents, at any time arising from, or in any way related to, your marketing and potential client contact activities.

**Royal objects to the Request on the grounds that it is outside the scope of permissible discovery. To the extent the Court determines that such documents should be produced, despite the General Response set forth above, Royal submits that such documents should only be produced subject to a protective order governing the use and distribution of same.**

DATED this 7th day of July, 2022

/s/ Curtis R. Hussey
Curtis R. Hussey, Esq. (HUSSC7684)
Gulf Coast ADR, LLC
82 Plantation Pointe #288
Fairhope, AL  36532
251.928.1423
gulfcoastadr@gmail.com

## SENT BY EMAIL TO

Earl P. Underwood, Jr.
Counsel for Plaintiff
21 South Section Street
Fairhope, AL  36532
251-990-5558
epunderwood@alalaw.com

Steven P. Gregory
Counsel for Plaintiff
505 20th Street North, Ste 1215
Birmingham, AL 35203
205-208-0312
steve@gregorylawfirm.com

DATED this 7th day of July, 2022


/s/ *Curtis R. Hussey*_____

**Attachment 1 to RFP responses – July 7, 2022**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

LINDSEY J. TOMPKINS,                )
                                    )
      Plaintiff,                    )      Case No.: 1:21-CV-00288
                                    )
v.                                  )
                                    )
ROYAL ADMINISTRATION                )
    SERVICES, INC.                  )
                                    )
      Defendant.                    )
_____)

## DEFENDANT'S RESPONSES
## TO PLAINTIFF'S FIRST REQUEST FOR ADMISSION TO DEFENDANT

Defendant, Royal Administration Services, Inc. responds to the Plaintiff's First Requests

for Admission to Defendant, dated January 10, 2022, as follows:

1.      Admit that this Defendant's name is correctly stated in the Complaint caption.

**Admit.**

2.      Admit that You or your vendor placed more than one call to Plaintiff.

**Response:  See Responses to Interrogatories.  This Request for Admission is Denied.**

3.      Admit that Plaintiff has not provided his prior express *written* consent, as defined

by 47 C.F.R. ¶ 64.1200(a)(2), to be contacted by Defendant or any vendor identified in your

answers to Interrogatories for telemarketing purposes.

**Response: Defendant has no information regarding whether plaintiff has provided**

**written consent to receive telephone calls for telemarketing purposes but denies that**

**any such calls were made.  *See* Responses to Interrogatories.**

4.      Admit that 251-753-7876 is Plaintiffs cellular telephone number.

**Response:  Defendant does not have information sufficient to admit or deny the request, other than as provided by Plaintiff's counsel after the lawsuit was initiated, and therefore denies same as to any prior knowledge of Plaintiff's telephone number.**

5.      Admit that Defendant or a vendor contacted Plaintiff by placing telephone calls and sending texts messages to 251-753-7876 .

**Response:  Denied.  *See* Responses to Interrogatories.**

6.      Admit that the telephone calls place to Plaintiff, directly or through a vendor, were not made for "emergency purposes" as defined in 47 C.F.R 64. §1200.

**Response:  Deny that any calls were made by Defendant or anyone acting at Defendant's direction. *See* Responses to Interrogatories.**

7.      Admit that each telephone call placed to Plaintiff by Defendant, directly or through a vendor, was a "telemarketing call" or "telephone solicitation" as defined in 47 C.F.R 64 §227(a)(4).

**Response: Deny that any calls were made by Defendant or anyone acting at Defendant's direction. See Responses to Interrogatories.**

8.      Admit that each telephone call placed to Plaintiff by Defendant, directly or through a vendor, was made intentionally.

**Response: Deny that any calls were made by Defendant or anyone acting at Defendant's direction. See Responses to Interrogatories.**

9.     Admit that each telephone call placed to Plaintiff by Defendant, directly or through a vendor, was a "telemarketing call" or "telephone solicitation" as defined in 47 C.F.R 64 §227(a)(4).

**Response:  Objection, the Request is duplicative of Request No. 7 above.**

10.     Admit that the telephone calls place to Plaintiff, directly or through a vendor, were not made for "emergency purposes" as defined in 47 C.F.R 64. §1200.

**Response:  Objection, the Request is duplicative of Request No. 6 above.**

11.     Admit that each telephone call placed to Plaintiff by Defendant, directly or through a vendor, was a "telemarketing call" or "telephone solicitation" as defined in 47 C.F.R 64 §227(a)(4).

**Response:  Objection, the Request is duplicative of Request Nos. 7 above.**

12.     Admit that each telephone call placed to Plaintiff by Defendant, directly or through a vendor, was made intentionally.

**Response:  Objection, the Request is duplicative of Request No. 8 above.**

13.     Admit that each telephone call placed to Plaintiff by Defendant, directly or through a vendor, was a "telemarketing call" or "telephone solicitation" as defined in 47 C.F.R 64 §227(a)(1).

**Response:  Objection, the Request is duplicative of Request No. 9 above.**

                                        */s/ Curtis R. Hussey*

                                        Curtis R. Hussey (HUS004)
                                        Gulf Coast ADR, LLC
                                        82 Plantation Pointe #288
                                        Fairhope, AL  36532
                                        251.401.4882
                                        gulfcoastadr@gmail.com

 **Gmail**                                          Curtis Hussey <gulfcoastadr@gmail.com>

## Tompkins v. Royal Administration
1 message

**Curtis Hussey** <gulfcoastadr@gmail.com>                          Wed, Mar 16, 2022 at 3:43 PM
To: "Earl P. Underwood, Jr." <epunderwood@alalaw.com>, Steven Gregory <steve@gregorylawfirm.us>

Counsel,
    As I discussed with Earl a few minutes ago, I have filed a Notice of Service of responses as to the Interrogatories and
Requests for Admission.  A copy of the Responses is attached hereto for your review.  I appreciate your courtesy with my
requests for extension.  Earl, this further confirms my request for an additional extension of time to respond to the
Requests for Production of Documents, while you review these Responses and we have time to discuss them.
Additionally, depending on where those discussions lead, we may need to request a Protective Order.
    Regards,  Curt Hussey


Curtis R. Hussey, Attorney at Law
Gulf Coast ADR, LLC
82 Plantation Pointe Road #288
Fairhope, Alabama  36532
(251) 928-1423
Licensed in Alabama, Mississippi and Utah
gulfcoastadr@gmail.com

This e-mail may contain confidential information that is protected
by the attorney-client or work product privilege.  If the reader of
this message is not the intended recipient or an employee
responsible for delivering the message, please do not distribute,
notify us immediately, and delete the message from your computer.

IRS Circular 230 Disclosure:  To comply with requirements
imposed by the Internal Revenue Service, we advise you that any
advice or discussion of U.S. Federal tax issues contained in
this communication is not intended or written to be used, and
cannot be used by you to (i) avoid penalties imposed under the
Internal Revenue Code, or (ii) promote, market or recommend to
another party any transaction or matter addressed herein.
Thank you

**2 attachments**

📄 **20220316 Response to to Interrogatories_Signed by Rich_031622.pdf**
    209K

📄 **20220316 Response to Plaintiffs Rogs Final.pdf**
    127K

**Attachment 2 to RFP responses – July 7, 2022**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **LINDSEY J. TOMPKINS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.: 1:21-CV-00288 KD-N** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ROYAL ADMINISTRATION** | ) | |
| **SERVICES, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

## RESPONSE TO PLAINTIFF'S
## FIRST INTERROGATORIES TO DEFENDANT

Defendant, Royal Administration Services, Inc. ("Royal") responds to Plaintiff's

First Interrogatories to Defendant, dated January 10, 2022, as follows:

### GENERAL OBJECTION

Royal objects generally to the extent the Interrogatories are beyond the scope of

discovery as established by the Federal Rules of Civil Procedure.  Royal objects to the

extent the Interrogatories are vague and susceptible to varying interpretations.

### GENERAL RESPONSE

Royal develops various Vehicle Service Contract Programs.  As such programs are

developed, Royal submits them to various states for registration and approval for sale in

such states.  These Vehicle Service Contract Programs, are then made available for resale

by various independent companies, which are referred to as "vendors" or "resellers".

These reseller/vendors then sell such products by marketing direct to consumers, for such retail profit as they are able to obtain from buyers/consumers.

No reseller/vendor is foreclosed from doing independent business with or marketing for other companies.

At no time does Royal engage with any reseller/vendor in an exclusive manner

Interrogatory No. 1:  Identify each vendor, officer, director, partner, shareholder, managing agent, or employee of Defendant authorized, approved, and empowered to place the calls and text messages made to Plaintiff.

**Response: See General Response above.  Defendant does not have any officer, director, partner, shareholder, managing agent, or employee of Defendant authorized, approved, and empowered to place calls and text messages to any party, and specifically to any calls that were made to Plaintiff.**

**As to reseller/vendors, Royal has not identified any reseller/vendor which made the calls and text messages alleged by Plaintiff.  Moreover, to the extent further discovery or investigation reveals any such contact by a reseller/vendor affiliated with Royal, Royal further responds that no such calls were "authorized, approved, and empowered to place the calls and text messages made to Plaintiff", because Royal has specifically contracted with its reseller/vendors not to make contacts which violate applicable state or federal laws.**

**Accordingly, Royal responds that there are none.**

Interrogatory No. 2:  State the last known address and telephone number of each individual likely to have discoverable information, along with the subjects of that

information, that you may use to support your claims or defenses (unless the use would be solely for impeachment).

**Response:   Rich McCabe, President, and Joanne Wisnaskas, Chief Operating Officer.  These executive members of Royal may be contacted through counsel.**

<u>Interrogatory No. 3</u>: Describe every way leads are provided to you in detail.

**Response:  See General Response above.  Royal does not generate nor accept leads and does no direct marketing of the products it creates and services.**

<u>Interrogatory No. 4</u>:  List each entity or vendor you receive leads [sic] and state how such leads were generated and initially contacted.

**Response:  See General Response above. Royal objects that the Interrogatory is vague and ambiguous as written.  To the extent the Interrogatory is intended to inquire as to whether or how various entities or vendors provide leads to Royal, Royal's response is that it receives no "leads" from other entities or vendors and does no direct marketing or solicitation.  To the extent the Interrogatory is intended to inquire as to lead generation practices of independent and third-party entities or vendors, Royal responds that it has no direct knowledge as to such practices of such entities or vendors.**

<u>Interrogatory No. 5</u>:  State expressly how and when you obtained any information regarding the plaintiff, including but not limited to the plaintiff's telephone number or numbers.

**Response:  See General Response above. The only information received by Royal regarding plaintiff has come for Plaintiff's counsel, within the context of the instant lawsuit.**

Interrogatory No. 6:  State the location (address including floor or suite number and zip code) from which any calls were made or text messages were sent, to Plaintiff, whether by you or a vendor.

**Response:  See General Response above.  Royal has no other information about the calls alleged by Plaintiff.**

Interrogatory No. 7:  State the number of times you or your vendor contacted the plaintiff.

**Response:  See General Response above.  Royal has no other information about the calls alleged by Plaintiff.**

Interrogatory No. 8:  State the numbers from which each telephone call is placed by you or your vendors to Plaintiff originated [e.g. (540) 274-4361].

**Response:  See General Response above.  Royal has no other information about the calls alleged by Plaintiff.**

Interrogatory No. 9:  Identify and describe fully and with particularity why Plaintiff was selected to receive the subject calls.

**Response:  See General Response above.  Royal has no other information about the calls alleged by Plaintiff.**

4

Interrogatory No. 10: Describe, step-by-step, the process you use to ensure that the telephone calls and made and sent by you, or your vendor, to Plaintiff.

**Response:  Objection, the Interrogatory is vague and appears to be incomplete, and therefore Royal cannot respond to same.  Without waiving the objection, Royal directs Plaintiff to the General Response above.**

Interrogatory No. 11: For each complaint that you received from any state or federal agency (at any time between five (5) years before the filing of the Complaint and the current date) which accuses you of violating the TCPA, please identify by name, last known address and telephone number, the complaining party.

**Response:  Objection, the Interrogatory is outside the scope of discovery as allowed by federal rule. Federal Rule Civil Procedure 26(b)(1) provides, in relevant part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is <u>relevant to any party's claim or defense and proportional to the needs of the case,</u> . . . [and this discoverable information] need not be admissible in evidence." Any other complaint against Royal for alleged violations of the TCPA is wholly irrelevant to the issue of whether there was a violation as alleged in this matter.**

Interrogatory No. 12: For each Request for Admission served herewith, your response was not an unqualified admission; state the number of such responses and all facts in detail upon which you base such response.

**Response:  See Responses to Requests for Admission Nos. 2-8, each of which provides the basis therefor.**

**For responses:**

I certify and declare under penalty of perjury that the foregoing responses are true and correct.

Rich McCabe
President, Royal Administration Services, Inc.

**For objections:**

*/s/ Curtis R. Hussey*
Counsel for Defendant

**Attachment 3 to RFP responses – July 7, 2022**

# Gulf Coast ADR, LLC

82 Plantation Pointe #288, Fairhope, AL 36532
251.928.1423
gulfcoastadr@gmail.com

June 13, 2022

Earl Underwood
Steve Gregory
By email only

Re:     Tompkins v. Royal Administration

Dear Counsel:

This is to follow up on my phone conversation with Earl on June 9. Thanks again for agreeing to my request for an extension of the deadlines in the current Scheduling Order, given my upcoming surgery.

As to the substance of this case, as I mentioned to you it appears that Ms. Tompkins has sued the wrong company. Please consider the following.[1]

> 1. As I have previously related to you, my client representatives inform me that they have reviewed their internal records. They do not operate or own any of the numbers alleged in the complaint, or which have entered the discussions otherwise. (Each of those is discussed in more detail below).

> 2. They have also verified that none of "Royal's vendors"[2] authorized to offer Royal's products for sale own or operate those numbers.

> 3. The Complaint alleges that several calls originate from area code 973. (See Complaint ¶¶ 20, 24). That area code is in New Jersey.

4. Royal Administration is located in Hanover, Massachusetts.

---

[1] In the normal course of a case, given what is set forth in this letter I would normally proceed with a Motion for Summary Judgment, accompanied by an Affidavit from the appropriate person(s) at Royal Administration, and more detailed exhibits with proper Bates numbering. Given my time current time constraints, I cannot logistically put that together before my surgery. However, my client has confirmed these matters, and I anticipate that affidavits and a Motion for Summary Judgment will be the next step.

[2] Please be reminded that none of the vendors authorized to offer Royal products is controlled by Royal. Each of them is an independent contractor, and is tasked with its own legal obligations and contractual obligation to Royal to abide by all laws and regulations regarding telemarketing. Each vendor has agreed to indemnify Royal for a failure to do so. Of course no such indemnity is at issue here, given that Royal is simply a wrongly-identified and wrongly-named defendant.

Earl Underwood
Steve Gregory
June 13, 2022
Tompkins v. Royal Administration
Page 2

5. There is a company named N.C.W.C., Inc. located in New Jersey. It is a competitor of Royal. It has been sued in the State of Wisconsin for improper solicitation practices. I am transmitting a copy of that Wisconsin complaint for your review. (Doc. 1). Please note that paragraph 3 of that Complaint alleges an address for <u>NCWC at 3430 Sunset Avenue, Ste. 15, Ocean, New Jersey 07712</u>.

6. Internet research reveals that a product, apparently being marketed under the name of "Royal Protection Plant Auto Warranty", is being offered by a company located at "<u>3430 Sunset Avenue in Ocean NJ</u>". (See Doc. 2) (printout of search result at salespider.com/b-385363114/royal-plan-auto-warranty). You will note that the address of this plan matches the address of NCWC.

7. NCWC is not affiliated with Royal Administration, the defendant herein.

8. While perhaps not directly relevant to this lawsuit, be aware that Royal Administration has sent a Cease and Desist letter to NCWC, to demand that they stop marketing using the name of Royal in any way. (See Doc. 3).

9. In prior email correspondence, you transmitted an advertisement photo which requests a call to 1-800-794-9104, to obtain a free quote. (Doc. 4). A call to that number states that it "is not assigned yet". Royal Administration has no other information about that number.

10. You also referenced in an email to Chris Meier, prior counsel for Royal, the phone number 800-794-9014, which is possibly a typographical error of the unregistered number discussed in the preceding paragraph. Regardless of the source, calls to that number are answered by a debt collection agency. Royal has no affiliation with that agency.

Given the foregoing, the allegations of your Complaint are simply misguided as to this Defendant. Please research the matters set forth herein; I believe you will determine such to be the case and agree that dismissal is proper. When I am back up to speed, I will contact you and we can determine where things stand.

Earl Underwood
Steve Gregory
June 13, 2022
Tompkins v. Royal Administration
Page 3

Sincerely,

CURTIS R. HUSSEY

CC:   CLIENT (WITH ATTACHMENTS)
      BY EMAIL

**Attachment 4 to RFP responses – July 7, 2022**

STATE OF WISCONSIN       CIRCUIT COURT       DANE COUNTY

STATE OF WISCONSIN,

          Plaintiff,

                                   Complex Forfeiture:  30109

   v.

N.C.W.C., INC.,

          Defendant.

## COMPLAINT

The State of Wisconsin, by its attorneys, Attorney General Joshua L. Kaul, and Assistant Attorney General Lewis Beilin, upon referral from the Wisconsin Department of Agriculture, Trade and Consumer Protection (DATCP), brings this action against the Defendants named above and alleges as follows:

### JURISDICTION AND VENUE

1.    This action is brought pursuant to Wis. Stats. §§ 100.20(6) and 100.52 to enforce and restrain violations of Wis. Stat. § 100.52 and Wis. Admin. Code §§ ATCP 127.81 and 127.82.

2.    Venue is proper in Dane County because it is a county where the Defendants have done substantial business, and it is a county where at least one of the claims arose. Wis. Stat. § 801.50(2)(a) and (c).



## PARTIES

3.    Plaintiff, State of Wisconsin, has its principal offices in Madison, Wisconsin. The Wisconsin Department of Justice is located at 17 West Main Street, Madison, Wisconsin 53703.

4.    Defendant, N.C.W.C. Inc. ("N.C.W.C."), is a New Jersey business corporation with its principal place of business at 3430 Sunset Avenue, Suite 15, Ocean, New Jersey 07712. N.C.W.C.'s registered agent in New Jersey is Corporation Service Company, located at 100 Charles Ewing Boulevard (Princeton South Corporate Center, Suite 160, Ewing, New Jersey 08628.

5.    N.C.W.C. has registered, and upon information and belief has used the following trade names: Safecar, Got Warranty, Heritage Automotive Protection, Liberty Automotive Protection, Warranty World, Dealer Services, and Dealer Services Marketing Co.

6.    The Owner, C.E.O. and Secretary of N.C.W.C. is Mr. Michael Shaftel, who resides at 200 East Palmetto Park Road, Apt. 904, Boca Raton, Florida 33432-5623.

7.    Upon information and belief, until October 18, 2021, Mr. Shaftel was also the President of N.C.W.C. Mr. Haytham Elzayn has been the President of N.C.W.C. since October 18, 2021.

8.    N.C.W.C. has never been registered to do business in Wisconsin with the Wisconsin Department of Financial Institutions.

## FACTUAL ALLEGATIONS

9.     N.C.W.C. is a nationwide provider of aftermarket extended vehicle service contracts.

10.     The contracts that N.C.W.C. markets are administered by Palmer Administrative Services, Inc., d/b/a Palmer Administration ("Palmer"), a Delaware corporation that has its principal place of business at the same location as N.C.W.C.: 3430 Sunset Avenue, Ocean, New Jersey 07712.

11.     Palmer and N.C.W.C. have been, and upon information and belief remain under the common ownership of Michael Shaftel.

12.     N.C.W.C. has never been registered as a telephone solicitor in Wisconsin.

13.     Between July 12, 2017, and January 11, 2018, and between March 30, 2018, and April 23, 2018, N.C.W.C. made 19,994 telephone solicitations to Wisconsin consumers for the purpose of marketing vehicle service plans.

14.     When it made the calls described in paragraph 13, N.C.W.C. used the trade name "Safecar."

15.     Of those 19,994 telephone solicitations, 4,144 were made to Wisconsin consumers on the Do-Not-Call registry at the time the calls were made.

16.     In addition to conducting telemarketing directly, N.C.W.C. has contracted with over 40 other companies to market Palmer-administered vehicle service plans using what N.C.W.C. calls its proprietary "Program."

3

17.     N.C.W.C. has entered into what it has characterized as a standardized "Sales Representative Agreement" with these other companies.

18.     These contracted marketing companies include, but are not limited to American Vehicle Protection of Fort Lauderdale, FL; Consumer Auto Protection Plans of Boca Raton, FL; Accelerated Business Systems of Lewes, DE; Liberty Automotive Protection of Ocean, NJ; Rapid Marketing, LLC d/b/a DRIVUS of O'Fallon, MO; Complete Auto Care of Las Vegas, NV; Convoso, Inc. of Woodland Hills, CA; Ox Car Care, Inc. of Irvine, CA; CarGuard Administration of Phoenix, AZ; and USA Auto Protection, LLC of St. Louis, MO.

19.     A list of vendor marketing companies who have entered into Sales Representative Agreements with N.C.W.C. is attached hereto as **Exhibit 1** and incorporated herein by reference.

20.     Under the terms of its "Sales Representative Agreement," N.C.W.C. "authorizes and appoints [name of company] as its non-exclusive representative to promote, market, and sell vehicle service contracts using [N.C.W.C.'s] Program, all in accordance with the terms and conditions of this Agreement."

21.     N.C.W.C.'s standard Sales Representative Agreement further provides that "[a]ll vehicle service contracts sold in the Program shall utilize only [N.C.W.C.'s] Program materials. [N.C.W.C.'s] Program materials include a model telemarketing script and promotional materials."

22.     The standard Sales Representative Agreement further requires that vendors use "only [N.C.W.C.'s] vehicle service contract plans, specimen service

4

contract forms, applications, marketing brochures, payment books, and other marketing documents."

23.     The standard Sales Representative Agreements forbids N.C.W.C.'s vendors from selling any product other than N.C.W.C.'s Palmer-administered product — not only during the term of the agreement itself but for two years after its termination, as well.

24.     N.C.W.C. has filed federal lawsuits against at least two of its contracted vendors alleging breaches of their "Sales Representative Agreements." N.C.W.C. has alleged, among other things, that the vendors violated the agreements by selling non-N.C.W.C./Palmer-administered products.

25.     Between January 2, 2018, and October 27, 2021, vendors for N.C.W.C. sold at least 3,182 extended vehicle service plan policies to Wisconsin residents.

26.     None of N.C.W.C.'s vendors has ever been registered in Wisconsin as a telephone solicitor.

27.     One of N.C.W.C.'s vendors, USA Auto Protection, LLC of St. Louis, Missouri ("USA Auto"), entered into a Sales Representative Agreement with N.C.W.C. on or about December 6, 2017. Michael Shaftel signed the Sales Representative Agreement on behalf of N.C.W.C. A true copy of N.C.W.C.'s Sales Representative Agreement with USA Auto is attached to this Complaint as **Exhibit 2** and incorporated herein by reference.

28.     Between March 2018 and March 2021, USA Auto made 21,675 telephone solicitations to Wisconsin telephone numbers to market N.C.W.C.'s vehicle

service plans administered by Palmer, pursuant to USA Auto's Sales Representative Agreement with N.C.W.C.

29.     Of those 21,675 calls, 11,614 were placed to Wisconsin telephone numbers registered on the Do-Not-Call list at the time.

30.     Another one of N.C.W.C.'s vendors, Ox Car Care, Inc. of Irvine, California ("Ox Car"), entered into a Sales Representative Agreement with N.C.W.C. on or about August 11, 2016. Michael Shaftel signed the agreement on behalf of N.C.W.C. A true copy of the Sales Representative Agreement with Ox Car is attached to this Complaint as **Exhibit 3** and incorporated herein by reference.

31.     Between January 2, 2018, and November 4, 2020, Ox Car made 1,095,575 telephone solicitations to Wisconsin telephone numbers to market N.C.W.C.'s vehicle service plans administered by Palmer pursuant to the Sales Representative Agreement with N.C.W.C.

32.     Of those 1,095,575 calls, 669,669 were placed to Wisconsin telephone numbers registered on the Do-Not-Call list at the time.

33.     In making telephone calls to Wisconsin numbers for the purpose of selling the Palmer-administered vehicle service plan product pursuant to their Sales Representative Agreements with N.C.W.C., USA Auto, Ox Car, and all the other marketing companies listed in **Exhibit 1**, were acting as "agents" of N.C.W.C. within the scope of Wis. Admin. Code § ATCP 127.82(2).

## CLAIM ONE

### Failure to Comply with Registration Provisions
### Wis. Stat. § 100.52 and Wis. Admin. Code § ATCP 127.81

34.     The State re-alleges all preceding paragraphs and incorporates them herein.

35.     N.C.W.C. is a "telephone solicitor" as defined in Wis. Stat. § 100.52(1)(i).

36.     N.C.W.C. is a "person" subject to Wis. Admin. Code § ATCP 127.81(1)(a).

37.     Between July 12, 2017, and January 11, 2018, and between March 30, 2018, and April 23, 2018, N.C.W.C. was not in compliance with the telephone solicitor registration provisions of Wis. Stat. § 100.52(3) and Wis. Admin. Code § ATCP 127.81.

38.     During that time, N.C.W.C. made or caused employees or contracted individuals to make 19,994 telephone solicitations to telephone numbers with Wisconsin area codes.

39.     Each telephone solicitation made to a Wisconsin number by N.C.W.C. while it was not registered as a telephone solicitor is a separate violation of Wis. Admin. Code § ATCP 127.81.

## CLAIM TWO

### Do-Not-Call Violations
### Wis. Stat. § 100.52 and Wis. Admin. Code § ATCP 127.82

40.     The State re-alleges all preceding paragraphs and incorporates them herein.

41.     Wis. Admin. Code § 127.82(2) provides that "[n]o person may make a telephone solicitation, either directly or through an employee or agent, to a covered

7

telephone customer whose telephone number appears on the current state do-not-call registry."

42.     N.C.W.C. is a "person" subject to Wis. Admin. Code § ATCP 127.82(2).

43.     USA Auto, Ox Car and the other companies identified in **Exhibit 1** were acting as the "agents" of N.C.W.C. within the meaning of Wis. Admin. Code § ATCP 127.82(2), through whom N.C.W.C. made telephone solicitations to Wisconsin numbers.

44.     Between July 12, 2017, and January 11, 2018, and between March 30, 2018, and April 23, 2018, N.C.W.C. made 4,144 telephone solicitations to do-not-call numbers.

45.     In addition, N.C.W.C. is liable for calls made by its agents to Wisconsin telephone numbers registered on the Do Not Call registry, including but not necessarily limited to the 681,283 calls that USA Auto and Ox Car made to Wisconsin numbers on the do-not-call registry, as alleged herein.

46.     Each telephone solicitation to a do-not-call number constitutes a separate violation of Wis. Stat. § 100.52 and Wis. Admin. Code § ATCP 127.82.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, State of Wisconsin, requests this Court enter judgment against N.C.W.C., as follows:

1.     Finding that N.C.W.C. violated Wis. Stat. § 100.52 and Wis. Admin. Code §§ ATCP 127.81 and 127.82;

8

2.     Imposing civil forfeitures against N.C.W.C for each violation of Wis. Stat. § 100.52 and Wis. Admin. Code §§ ATCP 127.81 and 127.82;

3.     Imposing all applicable penalty assessments and surcharges including consumer protection surcharges pursuant to Wis. Stat. § 100.261, plus all applicable assessments and costs;

4.     Permanently enjoining N.C.W.C, pursuant to Wis. Stat. §§ 100.20(6) and 100.52(9), from violating Wis. Stat. § 100.52 and Wis. Admin. Code Ch. ATCP 127 in the future;

5.     Awarding DATCP and the Department of Justice the necessary expenses incurred in their investigation and prosecution of this matter, including attorney fees, pursuant to Wis. Stats. §§ 93.20(2) and 100.263; and

6.     Awarding all other relief as the court may deem just and equitable.

Dated this 4th day of April, 2022.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

Electronically signed by:

s/ Lewis W. Beilin
LEWIS W. BEILIN
Assistant Attorney General
State Bar #1038835

Attorneys for State of Wisconsin

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-3076 | | (608) 294-2907 (Fax)
beilinlw@doj.state.wi.us

+ Add to     ⊕ ⊙ 🗑 ♡ ↻ 🔲    ✂ Edit & Create ∨

⌂ ⚠ Not secure | salespider.com/b-305363114/royal-protection-plan-auto-warranty

🌐 What's Happening ...  https://login.debtp..  https://hp.haccesst...  E-Filing (CM/ECF) »  G  Google  🌐  🌐 Home

🕷 SPIDER        Login    Free S

cts & Deals   **Directory**   Market Place   Community     **2022 Best Product Rev**

> Directory

**ss Directory**        Over 81.5 Million Businesses W

earch For Businesses By Keywords       *Enter in your city*



AGNANNI



Explore

## Protection Plan Auto Warranty



3430 Sunset Avenue
Ocean City, New Jersey 07712

📞 (866) 288-6212

🔗 http://www.royalprotectionplan.com/

🏷 Automotive Services » Automotive Services, Except Repair &
Carwashes

Not the business you're looking for?
Find more results for Royal Protection Plan Auto Warranty

Search for

1.  CAR BUYING GUIDE

2.  GET CAR TITLE

3.  BEST CAR OFFERS

4.  EXTENDED GUARANTEE FOR
    CARS

5.  BEST DEALS FOR A NEW CAR

Ad | Business Focus





MAGNANNI

Explore

## Royal Protection Plan Auto Warranty

3430 Sunset Avenue
Ocean City, New Jersey 07712

(866) 288-6212

http://www.royalprotectionplan.com/

Automotive Services » Automotive Services, Except Repair & Carwashes

Not the business you're looking for?
Find more results for Royal Protection Plan Auto Warranty

Search for

1. CAR BUYING GUIDE
2. GET CAR TITLE
3. BEST CAR OFFERS
4. EXTENDED GUARANTEE FOR CARS
5. BEST DEALS FOR A NEW CAR

Ad | Business Focus

**Search For "Automotive Services" Companies in Ocean City, New Jersey - Click Here Now!**

### Contact Details

Direct Contact for this business listing

Listing Creator

Send a Message

Business Hours

| | |
|---|---|
| Monday | 8:00 AM to 6:00 PM |
| Tuesday | 8:00 AM to 6:00 PM |
| Wednesday | 8:00 AM to 6:00 PM |
| Thursday | 8:00 AM to 6:00 PM |
| Friday | 8:00 AM to 6:00 PM |
| Saturday | 8:00 AM to 6:00 PM |
| Sunday | Closed |

### About Royal Protection Plan Auto Warranty

Royal Protection Plan Auto Warranty, Located At 3430 Sunset Avenue In Ocean, NJ, Specializes In Providing Car Owners With Extended Service Plans To Cover Vehicle Repairs. Among The Many Benefits To The Affordable Coverage Plans They Offer Are Lockout And Roadside Assistance, Car Rental, Trip Interruption Protection And Nationwide Coverage.

Royal Protection Plan Auto Warranty in Ocean City is a company that specializes in Automotive Services, Except Repair & Carwashes. Our records show it was established in New Jersey.

**Company Address**
3430 Sunset Avenue Ocean City, New Jersey, 07712

**Phone Number**
(866) 288-6212

**Company Website**
http://www.royalprotectionplan.com/

About SaleSpider

*SaleSpider connects small businesses with big opportunities.*

*Entrepreneur*

Add Your Business Now for Free!

**ROYAL**
ADMINISTRATION
SERVICES, INC.
51 Mill Street, Building F, Hanover, MA 02339
P 800.871.0467 • F 781.261.2522

April 22, 2022

N.C.W.C., Inc.

Attn: Legal Department

Via Mail: 3430 Sunset Ave Ste 15, Ocean, NJ 07712-3918

**Re:   Cease & Desist of Use of Name**

To Legal Department:

I served as General Counsel of Royal Administration Services, Inc. This letter services as an official cease and desist notice regarding the use of our Corporation name and Business product in your online marketing activity & mail flyer.

It has come to our attention that you and/or your advertising agency is marketing as "Royal" out of New Jersey has used our reputation and product line as well as tenure in the industry as a sales tool while marketing your customers.

Please see below two references (links) we have found that indicate your firm is marketing as Royal Administration Services with our products specifically named in the ad. The website that is referenced as the www.royalprotectionplan.com site is inoperable. We are able to locate another page using the link.

We demand that you cease use of naming "RoyalProtect" in your propaganda activity, and remove it from all current and future advertising, Additionally, we demand you cease use of naming any and all of Royal's product  and/or Royal's name on all of your advertisement.

We also demand that you confirm, by May 15, 2022, that you intend to comply with the above demand.



We are hopeful that this situation can be solved quickly and amicably. That said, we take potential FTC and MN deceptive advertising violations very seriously, and will not hesitate to take further legal action if we do not hear from you. Therefore, please contact me, or have your counsel contact me, as soon as possible to discuss this matter.

Royal does not waive and expressly reserves all of its legal rights. Thank you for your immediate attention to this urgent matter.


Yuxin Yan

General Counsel

Enclosure

## Acknowledgement

I, the undersigned, have received the Cease and Desist notice from Royal Administration Services, Inc. and hereby agree to remove all references to Royal' product on all current and future advertisement.


Printed Name

Signature

Date

6/11/22, 12:47 PM
Case 1:21-cv-00288-KD-N  Document 41-2  Filed 08/10/22  Page 39 of 42  PageID #: 289
RE: Tompkins v. Royal - Status conference - PRIORITY - gulfcoastadr@gmail.com - Gmail

 Gmail     from:(yyan@royaladmin.com) N.C.W     

1 of 6

## RE: Tompkins v. Royal - Status conference - PRIORITY

Inbox ×

**Yuxin Yan** via bnmcroyaladmincom.onmicrosoft.com      May 27, 2022, 11:25 AM
to me, Rich, Joanne

Please see attached email that you sent to us with below link which refers to the vide advertisement. **The phone number in this video is ending in 9104, not the numb claimed by Earl that ending in 9140.** This AD is not related to Tompkins because the numbers do not match. Therefore there's no any record that we could find showing the Tompkins' case is related to Royal.

https://www.dropbox.com/s/70supuzmch6pado/Advertisement%20with%20Royal%20Phone 20Number.MP4?dl=0.MP4

There's only one video advertisement record. When you clicked the link provided by Earl, you could see



Below is the email record from Earl:

**Attachment 5 to RFP responses – July 7, 2022**

**From:** Curtis Hussey <gulfcoastadr@gmail.com>
**Sent:** Monday, June 13, 2022 11:37 AM
**To:** Earl P. Underwood, Jr. <epunderwood@alalaw.com>; Steven Gregory <steve@gregorylawfirm.us>; Yuxin Yan <yyan@royaladmin.com>
**Subject:** Tompkins v. Royal Administration

Earl,

I have copied below two comments I received from corporate counsel for Royal, without waiving any privilege. (She is also copied on this email).

I apologize for any confusion; I understood I had to go-ahead from my client to send the letter in form it was, but did not hear back from Ms. Yan until this morning. That said, I don't believe these matters of clarification will change the substance of my prior letter.

Please include Ms. Yan, corporate counsel, on future emails.

Regards, Curt Hussey



**Curtis Hussey** <gulfcoastadr@gmail.com>  Mon, Jun 13, 1:48 PM 
to Jr., Steven, Yuxin

Thanks for your email. Please see the highlighted version of the letter I sent over the weekend.
The analysis remains the same as there stated.

I will be out of touch at this point, until after my surgery.

Regards,  Curt Hussey